UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EUGENE MCKINNEY,

    Plaintiff,

v.                                       Case No.  2:14-cv-220
                                     HON.  ROBERT HOLMES BELL

GARY RUTENBAR, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

        Plaintiff Eugene McKinney filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Gary Rutenbar and Unknown Corrigan.  Defendants have filed a motion for summary judgment. (ECF No. 46)  The remaining issues in this case involve alleged threats of a transfer and loss of a job that were the subject of Plaintiff's exhausted grievance filings.  The Court has already dismissed Plaintiff's retaliation claim regarding his actual transfer and job loss for lack of exhaustion.  (ECF No. 23)  Defendants move for summary judgment based upon the defense of qualified immunity.  Defendants assert that it was not clearly established law that threatening to file a grievance was protected conduct and that it was not clearly established law that threatening a prisoner with transfer and a job loss was adverse conduct necessary to support a retaliation claim.

        Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing

district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

A qualified immunity analysis involves two parts which include consideration of the clarity of the law at the time of the alleged violation to determine whether the asserted right was clearly established and consideration of the specific factual circumstances known by the officer to determine whether a reasonable officer could have known that their conduct violates that right. *Smith v. City of Wyoming*, 1:13-cv-915, slip op. (6th Cir., May 18, 2016). Thus, the Court must consider "the plaintiff's asserted right with specificity, and focus on the particular facts known to the officer at the time." *Id*. at slip op. 9. "The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that a claim of threatened retaliation was not clearly established as of February 14, 2014.  In order to fully understand what this case is about, it is important to consider Plaintiff's Step I grievance submission on the issues presented.   Plaintiff wrote at Step I:

> On 2/14/14, While I was sitting in the dayroom waiting to go to my work assignment C/O Rutenbar entered the dayroom yelling in the presence of witnesses, "Hey McKinney quit dicking around and go to work shoeshine boy." I respectfully asked him not to speak to me that way, but he continued to talk to me in a derogatory manner saying, "Take your Black ass to work.  In the course of going to work I told him that I would be filing a grievance for his derogatory language.  After I told him that I would be filing a grievance C/O Rutenbar said, "Okay, I'm going to talk to Pennei about having you terminated since you want to file a grievance.

PageID.88.  It is noted that Plaintiff filed this grievance against Defendant Rutenbar because Defendant Rutenbar allegedly used demeaning and threatening language in violation of MDOC Policy.

In the opinion of the undersigned, Defendant Corrigan is correct that Plaintiff has not established that any threat of transfer or job loss came from Defendant Corrigan.  Plaintiff never asserted in any grievance that Defendant Corrigan made any threat to transfer him to a new prison or cause him to lose his prison job.  Accordingly, it is recommended that Defendant Corrigan is entitled to qualified immunity from liability and should be dismissed from this action.

Plaintiff has asserted that Defendant Rutenbar threatened him with a prison transfer and job loss.  Indeed, Plaintiff was transferred to a new prison and his transfer resulted in the loss of his shoe shining job.  Defendants argue that the act of threatening to file a grievance is not protected conduct.  In *Carter v. Dolce*, 647 F. Supp.2d 826, 834 (E.D. Mich. 2009) the Court stated that "when it comes to protecting First Amendment rights, including the right to petition the

government for redress, there is little difference between retaliating against a person for filing a grievance and retaliating for threatening to file one."[1]  The Court explained:

> Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right. It appears that the Sixth Circuit treats filing and threatening to file as categorically identical outside the prison context. *See Jackson v. City of Columbus,* 194 F.3d 737, 756–57 (6th Cir.1999) (holding that an employee engages in protected activity under the First Amendment when he threatens to file a lawsuit on a matter of public concern), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 200 (6th Cir.1986) (noting that there is " 'no legal distinction ... between the filing of a charge which is clearly protected ... and threatening to file a charge' " under Title VII's anti-retaliation provisions) (quoting *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.,* 685 F.2d 1149, 1156 n. 3 (9th Cir.1982)).

*Id.*

Defendants argue that the threat of a job loss or transfer to a new prison is not adverse conduct.  "The factual question is whether the injury inflicted is so slight that it could not reasonably be expected to deter protected conduct.  The standard is not intended to foreclose relief to all by the superfirm plaintiffs, who are willing and able to persist in their suits in the face of retaliatory actions that would cause most plaintiff's to crumple.  Rather, the purpose of the standard is to avoid trivializing the First Amendment by eliminating suits based upon insignificant acts of retaliation."  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).  Certainly, after 2002 this was the clearly established law for adverse conduct analysis.

---

[1] Defense counsel indicates that he is not aware of any case in the Sixth Circuit or and District Court decision that has held that a threat to file a grievance is protected conduct.  Interestingly, the Michigan Attorney General's Office represented the Defendant in *Carter*.

In *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), the Sixth Circuit held that a transfer to administrative segregation or even the threat of a transfer to another prison's lock-down unit can be sufficient to constitute adverse action. "Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Id*. at 472. Similarly, in *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005) the Sixth Circuit held that a transfer may be adverse action when it affects access to the courts by denying a prisoner the ability to pay his lawyer through the consequential loss of a prison job as a result of the transfer. The threat to have a prisoner moved to a different unit to cause the loss of his prison job, with a threat to influence the warden to have a prisoner moved to another prison far from his family was sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *Parsley v. Conerly*, 345 Fed. Appx. 981 (6th Cir. 2009) citing *Smith v. Yarrow*, 78 Fed. Appx. 529, 54 (6th Cir. 2003).

Conversely, a threat to merely transfer a prisoner to another cell that would not result in the loss of a prison job, alienation from family, or a denial of a right to legal representation is not actionable. *Alexander v. Govern*, 2016 WL 2604634, slip op. at 4 (WD Mich May 6, 2016). Similarly, adverse conduct is not shown simply when a prisoner was allegedly transferred in retaliation for grievance filings and lost his job as a result of the transfer. *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001). Moreover, the Sixth Circuit has held that merely transferring a prisoner to a different facility is not adverse conduct without a showing that the prisoner suffered something more, such as a denial of access to the courts, job loss that allowed the prisoner to pay for his attorney, or placement in a more restrictive prison environment. *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005); *Hermansen v. Kentucky Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014).

In the opinion of the undersigned, threatened retaliation can constitute adverse action under some circumstances. In this case, Plaintiff alleges that he was threatened with a transfer to a new prison and loss of his prison job. Plaintiff has not alleged that the threat of job loss and prison transfer denied him access to the courts, the ability to pay his attorney, or would place him in a more restrictive prison environment. Plaintiff has not shown that it is clearly established "beyond debate" that the threat of a transfer and job loss are adverse conduct under existing precedent. *Mullenix* 36 S.Ct. at 309. Accordingly, in the opinion of the undersigned, Plaintiff has failed to show that the threatened retaliation was a violation of clearly established law.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 46) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     July 11, 2016

    /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE